Spencer B. WARNER, Appellant,

v.

**MISSOURI DIRECTOR OF REVENUE, Respondent.**

**No. WD 67875.**

Missouri Court of Appeals, Western District.

Dec. 11, 2007.

Scott Cameron Hamilton, Lexington, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, for Respondent.

Joshua N. Corman, Asst. Attorney General, Jefferson City, MO, joins on the briefs for Respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., J., and JAMES E. WELSH, Sp. J.

JAMES M. SMART, JR., Judge.

Spencer Warner appeals the circuit court's judgment upholding the Director of Revenue's revocation of his driving privileges for his refusal to submit to a breathalyzer test. We affirm.

## Background

The Director of Revenue revoked Spencer Warner's driving privileges for a period of one year after he refused to submit to a breathalyzer test, pursuant to section 577.041.[1] Warner petitioned the circuit court for a hearing on the matter, and the following evidence was presented at the hearing.

On July 14, 2006, at around 10:00 p.m., Kent and Marsha Corbin's neighbor called to tell them that a pickup truck had gone through a fence on their farm along 24 Highway in Lafayette County. The Corbins arrived at the scene about ten to fifteen minutes later. They found Warner, whom they recognized, trying, unsuccessfully, to back the truck out of their cornfield. According to Mr. Corbin, when

Warner got out of the truck, he stumbled and fell. Mrs. Corbin said that Warner fell up against their vehicle and "[i]t appeared that he was either intoxicated or—or had some kind of problem." About twenty minutes later, before the police arrived, Warner "walked off" down the highway.

Sometime around 11:00 p.m., Highway Patrol Trooper Brett Brooks was notified about the accident. He arrived on the scene at 11:40 p.m. and found the truck that had gone through the fence and into the cornfield. The Corbins were at the accident scene, along with Officer Leland Liese from the Waverly, Missouri, Police Department. Officer Liese told Brooks that a witness had earlier seen Spencer Warner driving the truck that was wrecked. Officer Brooks saw beer cans throughout the cab of the truck and several more in a cooler in the bed of the truck.

Trooper Brooks next spoke with James Wilson, the owner of the wrecked truck, and Joy Mendenhall, who identified herself as Warner's girlfriend. The two had arrived sometime after the accident and were there when Trooper Brooks arrived. Wilson told Trooper Brooks that he and Warner had been at a residence at 24 Highway and Highway N prior to the accident. Wilson stated that he had driven the truck to the residence earlier but did not drive it to the accident scene. Both Wilson and Mendenhall told the officer they had been with Warner at the residence earlier. They said that soon after they arrived at the residence, they realized that both the truck and Warner were gone. Wilson believed that Warner had probably taken the truck. Mendenhall told Brooks that Warner had been drinking and that all of them were "drunk." She also said

1. References to section 577.041 are to the Revised Statutes of Missouri, cum. supp., 2005. All other statutory references are to the Revised Statutes of Missouri, 2000.

Warner was probably picked up by his parents and taken home.

Based on his observation of Wilson, the truck owner, Brooks administered a portable breathalyzer test to Wilson, which evidently indicated intoxication. Because Wilson acknowledged driving the truck earlier in the evening, Brooks placed Wilson in the patrol car.

Trooper Brooks then was notified that Warner's father, Phil Warner, had been stopped by another officer and was waiting to speak with Brooks in Waverly. Brooks drove to Waverly to speak with him. Phil Warner told the trooper that he received a call around 10:20 p.m. informing him that his son, Spencer, was walking home on 24 Highway. He said he went and picked him up, took him home, and told him to stay there. Phil Warner told Trooper Brooks that he knew Spencer had been drinking and that he had wrecked the truck.

Trooper Brooks headed toward Warner's residence. On the way, Wilson, who was in the back of the patrol car, said he thought he saw Warner at a house they had just passed. The trooper drove back to the house and found Warner sitting at a patio table in the yard. The home belonged to Penny and Joe Narron. Penny Narron was sitting at the table with Warner. Warner identified himself to Trooper Brooks. Brooks spoke with Warner and observed that he appeared "highly intoxicated." Trooper Brooks did not see Warner drinking alcohol, but there was alcohol at the table where Warner was sitting. Both Narrons stated that Warner arrived at their residence at around 11:30 p.m. and that Warner had consumed two beers and eaten a small dinner while there.

Brooks observed that Warner had distinct nystagmus in both eyes and his eyes were watery, bloodshot, and glassy. Warner's speech was slurred and he mumbled; he was incoherent and confused; and he emitted a very strong odor of alcohol. He stumbled when trying to walk, had a difficult time negotiating curves, and had trouble sitting down in the patrol car. Warner refused to take any field sobriety tests. At 12:30 a.m., Brooks arrested Warner for driving while intoxicated and leaving the scene of an accident. Brooks advised Warner of his *Miranda* rights.

Brooks transported Warner to the Lafayette County Sheriff's Department. Warner asked to speak with an attorney and was allowed to do so. Around 1:13 a.m., Brooks read Warner the "implied consent" law (section 577.041), informing Warner that refusal to submit to a chemical test would result in immediate revocation of his driver's license. Warner spoke with an attorney a second time. Warner refused to submit to a chemical test of his breath and declined to answer any questions.

At trial, the Director called Kent and Marsha Corbin, who testified to what they observed. The Director called Officer Brooks to testify, and introduced the Department's records, which are admissible under section 302.312.1. The records introduced included Warner's driver's record, the notice of revocation, and the officer's alcohol influence report (AIR), which included his narrative and also the signed statements of witnesses. Warner did not testify or present evidence.

Following the hearing, the court entered judgment sustaining the Director's one-year revocation of Warner's driving privileges. The court found that Trooper Brooks arrested Warner upon the basis of reasonable grounds to believe that Warner had been driving a motor vehicle while in an intoxicated condition. The court also found that Warner refused to take the breath test.

Warner appeals.

### Argument: Lack of Reasonable Grounds

Warner contends that the court erred in upholding the revocation of his driver's license, because, he says, the Director failed to prove that the arresting officer had reasonable grounds to believe that he was driving while intoxicated. Warner points in particular to the fact that he had consumed alcohol in the intervening time between the accident and the arrest.

#### *Review*

■ In reviewing a driver's license revocation case, as in any judge-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002) (*citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

Under Missouri's "implied consent" law, "any person who drives on the public highways is deemed to have consented to a chemical test to determine the alcohol or drug content of the person's blood." *Id.* at 619 (*citing* section 577.020.1). Pursuant to section 577.041.1, an officer requesting that a driver submit to a chemical test must inform the driver of his reasons for requesting the test and that refusal to take the test will result in immediate revocation of his driver's license. If, after being so informed, the driver still refuses to take the test, his driver's license will be revoked for a period of one year. Section 577.041.3. Pursuant to section 577.041.4, a person whose license has been so revoked may petition for a hearing before the circuit court, seeking to have the revocation set aside.

■ In order to uphold the revocation of a driver's license for refusal to take a breathalyzer test, the court need determine only (1) that the person was arrested, (2) that the arresting officer had reasonable grounds to believe that the person was driving while intoxicated, and (3) that the person refused to submit to the test. Section 577.041.4;[2] *Hinnah*, 77 S.W.3d at 620. The Director bears the burden of establishing each element by a preponderance of the evidence. *Yarsulik v. Dir. of Revenue*, 118 S.W.3d 279, 281 (Mo.App. 2003). Failure to prove all three elements will result in reinstatement of the driver's license. Section 577.041.5; *Hinnah*, 77 S.W.3d at 620.

#### *Reasonable Grounds/Probable Cause*

■ Warner does not dispute that he was arrested or that he refused to submit to the requested chemical test. The only issue on appeal is whether the court erred in determining that the arresting officer had "reasonable grounds" to believe that Warner was driving while intoxicated. *See* section 577.041.4.

■ In a refusal case, the Director is not required to prove that the driver was intoxicated. The Director need prove only that the officers involved had reasonable grounds to believe that he was. *Tolliver v. Dir. of Revenue*, 117 S.W.3d 191, 197 (Mo.

2. Section 577.041.4 states in relevant part:
   If a person's license has been revoked because of the person's refusal to submit to a chemical test, such person may petition for a hearing before [the circuit court]. At the hearing the court shall determine only:
   (1) Whether or not the person was arrested or stopped;
   (2) Whether or not the officer had:
   (a) Reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; .... and
   (3) Whether or not the person refused to submit to the test.

App.2003). Reasonable grounds in this context is virtually synonymous with probable cause. *Hinnah*, 77 S.W.3d at 620. "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *Id.* at 621. There is no precise test for whether probable cause exists; that determination is based on the particular facts and circumstances of each individual case. *Id.* The quantum of evidence necessary to establish probable cause is considerably less than that required to prove guilt beyond a reasonable doubt. *Wilcox v. Dir. of Revenue*, 842 S.W.2d 240, 243 (Mo.App.1992). While mere suspicion is insufficient, absolute certainty is not required. *Edmisten v. Dir. of Revenue*, 92 S.W.3d 270, 274 (Mo.App.2002).

■■■■ Pursuant to section 577.041.4, the trial court was required to determine whether Trooper Brooks had reasonable grounds to believe that Warner was driving while in an intoxicated condition. The trial court applies an objective standard in making this determination. *Guhr v. Dir. of Revenue*, 228 S.W.3d 581, 585 n. 3 (Mo. banc 2007). "In determining whether reasonable grounds exist, the court [ ] must evaluate the evidence from the viewpoint of a cautious, trained, and prudent police officer on the scene at the time of the arrest." *Scholes v. Dir. of Revenue*, 228 S.W.3d 62, 65 (Mo.App.2007). Probable cause depends upon the information the officer possessed prior to the arrest and the reasonable inferences that can be drawn therefrom. *Edmisten*, 92 S.W.3d at 274.

Trooper Brooks was informed by Officer Liese that the driver of a pickup truck had run off the road, through a fence, and into the Corbins' cornfield. Officer Liese also informed Trooper Brooks that a witness named Frank Amos had seen Warner driving that vehicle earlier. Officer Brooks personally talked to the owner of the truck, James W. Wilson, and Joy Mendenhall, both of whom said they had been with Warner earlier. Ms. Mendenhall said that all of them were drunk. Mr. Wilson told Officer Brooks that he thought Warner had taken his (Wilson's) truck. Brooks saw beer cans throughout the truck. Warner's father, who picked Warner up after the accident, told Brooks that he knew Warner had been drinking and that he had wrecked the truck.

When Brooks found Warner, he noted that Warner appeared to be intoxicated. There was alcohol on the table where Warner was sitting, but Brooks did not see Warner drinking any alcohol. The Narrons both stated that Warner had arrived at their residence at around 11:30 p.m. (about an hour earlier) and that he had consumed two beers and eaten a small dinner. Warner appeared to Brooks to be "highly intoxicated." Brooks observed that Warner had distinct nystagmus in both eyes and his eyes were watery, bloodshot, and glassy. His speech was slurred and he mumbled, he was incoherent and confused, and he emitted a very strong odor of alcohol. He stumbled, had a difficult time negotiating curves, and had trouble sitting down in the patrol car. He refused to take field sobriety tests.

■■■■ This is not an appeal of a DWI conviction, it is an appeal of an administrative revocation. In order for the officer to form a reasonable belief that Warner was intoxicated at the time of the accident, it was not necessary that the arresting officer have proof beyond a reasonable doubt, or that he possess all possible information concerning the offense and the arrestee's participation in it. *Howard v. McNeill*, 716 S.W.2d 912, 915 (Mo.App.1986). An officer is not required to have actually

observed the suspect driving in an intoxicated condition. *See Tolliver*, 117 S.W.3d at 198. Also significant is the information obtained from witnesses. *See id.* at 197. Here, Warner's girlfriend informed the officer that all of them had been "drunk." Warner's father informed the officer that Warner had "been drinking and driving." The officer also had observed circumstantial evidence. *See id.* at 198. Circumstantial evidence indicated that whoever was driving that truck drove off the road, through a fence, and into a cornfield for no apparent reason. The driver then left the scene before any officers arrived, possibly to avoid being seen in an intoxicated condition.

Warner contends that reasonable grounds did not exist because Officer Brooks was told that Warner had consumed two beers in the intervening time after the accident. We do not see how the fact that the Narrons informed the officer that Warner had two beers after the accident necessarily totally demolished the value of all the factors mentioned above tending to create probable cause to believe that Warner was intoxicated and driving at the time of the accident. The notion suggested is that a reasonable officer would conclude as follows: "well, I guess the fact that these people say Warner had two beers after the accident means that in spite of the other information there can be no probable cause to believe that Warner was driving while intoxicated." We think a reasonable officer would consider *all* the pertinent information available.

### The Test for Probable Cause is Objective

Werner also asserts that Brooks' belief that Warner was intoxicated was based *solely* upon his observations of him at the time of arrest. Warner bases this contention on the following portion of the transcript:

Q. [counsel for Director] Just for the purposes of clarification, based on exactly what led you to believe that Mr. Warner was intoxicated?

A. [Brooks] Based upon his distinct nystagmus in his eyes, both the horizontal and the presence of a vertical nystagmus, his mumbled and slurred speech, his stumbling, trouble walking, turning, sitting down, and the smell of alcohol about his person.

This argument, aside from the fact that it is an attempt to apply the question and answer out of context, entirely misses the point. The issue is not what the officer *subjectively* relied upon in deciding whether to arrest Warner. The test is an objective one: given the facts available to the officer at that time, would an objectively reasonable officer have concluded that there was probable cause to believe that Warner had been driving while intoxicated. There was substantial information available to the officer to cause a reasonable officer to believe there was probable cause. In this case, Officer Brooks had information from Officer Liese, from other witnesses, and from his own observations at the scene, as well as from his observations of Warner at the time of arrest. The court did not err in finding that the Director established at trial that a reasonable officer would have believed there was probable cause. Point denied.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

HARDWICK and WELSH, JJ., concur.