

# Missouri Court of Appeals

## Southern District

### Division Two

| | | |
|---|---|---|
| TANNER C. BEASLEY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. SD33925 |
| | ) | Filed: September 16, 2016 |
| DIRECTOR OF REVENUE, | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable J. Ronald Carrier, Associate Circuit Judge

**AFFIRMED**

On July 15, 2014, the Director of Revenue ("Director"), revoked the driving privileges of Tanner C. Beasley ("Beasley"), pursuant to section 577.041,[1] for failure to submit to a blood test after Beasley was found to be driving while intoxicated ("DWI"). On December 19, 2014, a post-revocation hearing was conducted and the trial court found in favor of the Director. We affirm the judgment of the trial court.

---

[1] All references to statutes are to RSMo Cum.Supp. (2010), unless otherwise indicated.

## Factual and Procedural Background

We recite the facts of this case in accord with the principle that we defer to the finder of fact on issues of contested fact. *White v. Director of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). Where the facts are uncontested, no deference is necessary because the trial court's assessment of the evidence is unnecessary. *Id.*

On July 6, 2014, at approximately 4:57 a.m., Sergeant Stephen Foster ("Sgt. Foster"),[2] with Troop G of the Missouri State Highway Patrol, responded to the scene of a one-vehicle accident in Shannon County. Upon arrival, Sgt. Foster observed a jeep off the roadway, on its driver's side in a ditch. He also observed an entire row of road signs (six)—a tenth or two-tenths of a mile before the accident scene—that had been knocked down and driven over. A seventh sign, also knocked down and driven over, was near where the jeep left the roadway. Sgt. Foster noticed numerous beer cans laying throughout the vehicle that had spilled out into the jeep from a cooler.

Sgt. Foster made contact with first responders who informed him that Beasley was the driver of the vehicle, there was a passenger, and Beasley had been airlifted to Cox South Hospital in Springfield with substantial serious injuries.

During his investigation at the scene, Sgt. Foster spoke with the passenger, identified as Dylan Hanger ("Hanger"), multiple times. Hanger stated both he and Beasley had been drinking, and that it was Beasley's 21st birthday. Hanger first stated that Beasley had swerved to miss a deer, ran off the road hitting a sign, and overturned. Later when asked about the multiple downed road signs, Hanger stated Beasley had intentionally driven off the roadway and started "knocking [the signs] down" which had made him "nervous." Sgt. Foster concluded that "it was apparent

---

[2] Sergeant Foster was a 12-year veteran who over the course of his career had made 200 to 300 DWI arrests, and investigated approximately 600 accident scenes.

that at some point . . . whether it was intentional or unintentional, the jeep struck the sign and the results of that impact caused the jeep to overturn onto the driver's side." He then reported to Troop G dispatch, who in turn contacted Troop D of the Missouri State Highway Patrol in Springfield requesting an officer make contact with Beasley at the hospital.

At approximately 5:20 a.m., Trooper Roger Myers ("Trooper Myers")[3] arrived at Cox South Hospital to make contact with the driver involved in a one-vehicle crash in Shannon County. Dispatch had advised that the driver was "possibly intoxicated," and identified Beasley as the driver. Beasley arrived at the hospital at 5:46 a.m.

Trooper Myers first made contact with the flight crew of the helicopter that transported Beasley, both of whom advised that Beasley had vomited during the flight, smelled of intoxicants, and was definitely intoxicated.

Trooper Myers then attempted to interview Beasley. He advised Beasley as to why he was there, but received no response. He asked Beasley what happened and again received no response. Trooper Myers asked Beasley if he had been drinking, but Beasley's reply was unintelligible. Trooper Myers then placed Beasley under arrest, read Beasley Missouri's Implied Consent warning, and received a short unintelligible response from Beasley. Trooper Myers asked Beasley if he would submit to a blood test, but received no response. A nurse who was also present in the room shook Beasley and asked Beasley if he would provide a blood sample for the trooper, and Beasley stated, "No." The nurse then told Beasley he would lose his license for one year if he refused, and Beasley again stated, "No." Trooper Myers did not ask Beasley to take a breath test due to extensive lacerations to Beasley's face. Trooper Myers advised Beasley that he was interpreting Beasley's actions as a refusal, Beasley would be receiving something in the mail, and

---

[3] Trooper Myers was a 22-year veteran who had made several hundred DWI arrests during the course of his career.

3

Trooper Myers left. It was Trooper Myers' observation that Beasley was not incapacitated. Trooper Myers completed an alcohol influence report.

The Director revoked Beasley's driver's license for a period of one year, pursuant to section 577.041, for Beasley's refusal to submit to a blood test. Beasley appealed to the Circuit Court of Greene County, Missouri.

A trial was held on December 19, 2014. On January 9, 2015, the trial court entered its "Findings of Fact, Conclusions of Law and Judgment," finding there was sufficient evidence for Trooper Myers to conclude that Beasley was in an intoxicated condition while operating a motor vehicle, and that Beasley had refused a blood test. This appeal followed.

Beasley's single point relied on states:

> The trial court's judgment that there was probable cause to believe that [Beasley] was driving while in an intoxicated condition was not supported by substantial evidence for the reasons that: (1) Trooper Myers did not personally observe even a single sign of intoxication when he was with [Beasley] before placing him under arrest; (2) Sgt. Foster's only involvement in the case was to investigate the accident and the Director never established what information Sgt. Foster actually possessed prior to Trooper Myers placing [Beasley] under arrest for driving while intoxicated; (3) the statements of Mr. Laurin and/or Mr. Faulkner, the two members of the EMS helicopter flight crew, to Trooper Myers, that they believed [Beasley] was "definitely intoxicated," were not substantial evidence; (4) the dispatches and/or reports that Trooper Myers received that advised that [Beasley] was intoxicated and/or that the driver was "possibly intoxicated" were not substantial evidence; (5) Evidence learned after [Beasley]'s arrest, including the fact that he was diagnosed by Dr. Jose Dominguez at Cox South Hospital with "acute alcohol intoxication" and that his medical records show "extremely sharp and severe alcohol intoxication" was not substantial evidence of intoxication that should have been considered by the [c]ourt when finding that there was probable cause to arrest [Beasley] for driving while intoxicated; and (6) the remaining evidence was insufficient to arrest [Beasley] for driving while intoxicated.[4]

---

[4] Section 577.041 uses the term "reasonable grounds," but "probable cause" is virtually synonymous in this context. *Jarboe v. Director of Revenue*, 434 S.W.3d 96, 98 (Mo.App. E.D. 2014). Beasley tends to use the latter term and we will do so, also.

4

## Standard of Review

The trial court's judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *White*, 321 S.W.3d at 307-08.

In reviewing a contested issue, the nature of our review is determined by whether the issue is a matter of fact or law. *Id.* at 308. We review questions of law *de novo*, whereas we defer to the trial court's assessment of the evidence on issues of fact. *Id.* However, where the facts are uncontested, we do not defer to the trial court's assessment of the evidence because there are no findings of fact to which we would need to defer. *Id.*

To contest evidence, parties need not affirmatively present contrary evidence. *State v. Mignone*, 411 S.W.3d 361, 364 (Mo.App. W.D. 2013). Evidence is contested where it is disputed in *any manner*. *Ayler v. Director of Revenue*, 439 S.W.3d 250, 255 (Mo.App. W.D. 2014). A party can dispute evidence in many ways, including cross-examining witnesses, pointing out internal inconsistencies in the evidence, challenging the credibility of a witness, or making argument to the trial court about the nature and quality of the evidence. *Mignone*, 411 S.W.3d at 364. We apply these standards as applicable to contested and uncontested factual issues in the record.

## Analysis

Beasley contends the trial court erred in affirming Beasley's revocation because there was insufficient evidence to support a probable cause finding that Beasley was driving while intoxicated.

> Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment. Evidence has probative force if it has any tendency to make a material fact more or less likely. When reviewing whether the circuit court's judgment is supported by substantial

5

evidence, appellate courts view the evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations. Appellate courts accept as true the evidence and inferences favorable to the trial court's decree and disregard all contrary evidence. In addition, this Court has made clear that no contrary evidence need be considered on a substantial-evidence challenge, regardless of whether the burden of proof at trial was proof by a preponderance of the evidence or proof by clear, cogent, and convincing evidence.

*Ivie v. Smith*, 439 S.W.3d 189, 199–200 (Mo. banc 2014) (internal quotations and citations omitted). "Rule 73.01(c) provides that all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *Id.* at 200 (internal quotation and citation omitted).

> [A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness. Thus, any citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence. Such contrary facts and inferences provide no assistance to this Court in determining whether the evidence and inferences favorable to the challenged proposition have probative force upon it, and are, therefore, evidence from which the trier of fact can reasonably decide that the proposition is true.

*Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App. S.D. 2010) (internal quotation and citations omitted).

Beasley's statement of facts fails to comply with the mandatory dictates of Rule 84.04(c),[5] which requires a "fair and concise statement of the facts relevant to the questions presented for determination without argument." Rule 84.04(c). "The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case." *Parker v. Dubois*, 489 S.W.3d 328, 331 (Mo.App. E.D. 2016) (internal quotation and citation omitted). Beasley's statement of facts ignores our standard of review and Rule 84.04(e) by reciting

---

All rule references are to Missouri Court Rules (2016).

6

facts unfavorable to the judgment—which we must ignore, and failing to include facts favorable to the judgment—which we must credit. *See id.*

There was substantial evidence to support a finding of probable cause. "There is no precise test for determining whether probable cause existed; rather, it is based on the particular facts and circumstances of the individual case." ***Tolliver v. Dir. of Revenue***, 117 S.W.3d 191, 197 (Mo.App. S.D. 2003) (internal quotation and citation omitted). "Probable cause is determined by the collective knowledge and the facts available to all officers participating in the arrest, and the arresting officer need not possess all of the available information." ***Id.*** "Radio bulletins, telephone calls, computer records, and police flyers have all been upheld as permissible means of authorizing officers to arrest, so long as the individual officer disseminating the information had probable cause to arrest at that time." ***State v. Pate***, 469 S.W.3d 904, 910 (Mo.App. E.D. 2015).

Sgt. Foster, at approximately 4:57 a.m., responded to a single-vehicle accident. He observed a jeep on its driver's side down in a ditch. He noted the jeep had run over an entire row of road signs, and that there were numerous beer cans in the jeep that had spilled out of a cooler into the jeep. Sgt. Foster spoke with the passenger of the vehicle who admitted that both he and the driver, Beasley, had been drinking. Sgt. Foster then reported to Troop G dispatch, which in turn contacted Troop D in Springfield, requesting an officer make contact with Beasley at the hospital. Thereafter, Trooper Myers arrived at Cox South Hospital to make contact with Beasley, whom dispatch identified as the driver and "possibly intoxicated." Trooper Myers made contact with the flight crew of the helicopter that transported Beasley to the hospital—both of the crew advised that Beasley had vomited during the flight, smelled of intoxicants, and was definitely intoxicated.

7

This evidence, obtained prior to Trooper Myers' attempt to perform a chemical test on Beasley, was sufficient to support a finding of probable cause of intoxication. Point denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

DANIEL E. SCOTT, J. - CONCURS