Gary M. Gartner, Jr., Presiding Judge
Introduction *41 Troy N. Trentmann (Trentmann) appeals the trial court's judgment sustaining the revocation of Trentmann's driving privileges for refusing to consent to a breath test following an arrest for driving while intoxicated. Trentmann argues: (1) the trial court's finding that State Trooper Daniel Highly (Trooper Highly) had reasonable grounds to believe that Trentmann drove while intoxicated was against the weight of the evidence, and (2) the trial court erroneously applied the law by finding that Trooper Highly satisfied statutory requirements for requesting a breath test to determine the alcohol content of Trentmann's blood. We affirm.
Background
On November 26, 2015, at approximately 5:18 a.m., Trooper Highly received a dispatch call regarding a motor vehicle crash. At 5:54 a.m., Trooper Highly arrived at the scene of the crash and observed a silver Dodge Durango sitting on its roof. An ambulance was already on the scene. Trooper Highly asked emergency personnel where the driver of the vehicle was located, and they informed Trooper Highly that the driver was inside the ambulance. Upon entering the ambulance, Trooper Highly found Trentmann, who stated he had been the only person in the vehicle when it crashed.
In observing Trentmann, Trooper Highly reported a moderate odor of intoxicants, watery and bloodshot eyes, and mumbled speech. Trooper Highly asked Trentmann what happened, and Trentmann stated, "[n]o idea." Trentmann admitted that he consumed alcohol "[l]ast night" and stated that he "woke up this morning to go home." Trooper Highly asked whether Trentmann woke up in the vehicle, and Trentmann responded, "[w]ell I woke up ... I, I don't recall," Trooper Highly asked Trentmann when he stopped drinking the night before, and Trentmann responded, "Around seven o'clock." When asked how much he drank, he replied, "[n]ot a lot." After observing Trentmann's condition and responses, Trooper Highly asked Trentmann to consent to a Preliminary Breath Test (PBT). Trentmann responded, "I guess so." Trooper Highly asked whether the response indicated yes or no, to which Trentmann answered "[n]o." Trooper Highly asked to check Trentmann's eyes and to administer a PBT. Trentmann refused both requests.
Upon Trentmann's refusal, Trooper Highly arrested Trentmann for driving while intoxicated and read Trentmann Missouri's implied consent law.[1] Subsequently, Trooper Highly asked Trentmann to submit to a breath test to check the alcohol content of his blood. Trentmann failed to respond, and Trooper Highly treated the silence as a refusal.
Because Trentmann refused this breath test, the Director revoked Trentmann's driving privileges for one year pursuant to Section 577.041.[2] Trentmann filed a petition for review in the circuit court, and the circuit court entered judgment sustaining the Director's revocation. This appeal follows.
Standard of Review
This Court will affirm the trial court's judgment unless it is unsupported *42 by substantial evidence, it is against the weight of the evidence, or it erroneously applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing factual assessments, we defer to the trial court's findings. Sostman v. Dir. of Revenue, 363 S.W.3d 55, 57 (Mo. App. E.D. 2011). For legal inquiries, we review questions of law without deference to the trial court's judgment. Hampton v. Dir. of Revenue, 22 S.W.3d 217, 220 (Mo. App. W.D. 2000).
Discussion
Point I
In his first point on appeal, Trentmann argues that the trial court's finding that Trooper Highly had probable cause to believe Trentmann drove while intoxicated is against the weight of the evidence. We disagree.
Under Section 577.020,[3] any person who operates a vehicle on a public highway is deemed to have consented to a chemical test for the purpose of determining the alcohol content of the person's breath, blood, or saliva. Section 577.020.1. Where a person refuses a chemical test, "the director shall revoke the license of the person refusing to take the test for a period of one year." Section 577.041.3. Courts uphold a license revocation upon a showing of three elements; (1) the person was arrested or stopped, (2) the arresting officer had reasonable grounds[4] to believe the person was driving a motor vehicle in an intoxicated condition, and (3) the person refused to submit to a [chemical] test. Section 577.041.4; Hinnah v. Dir. of Revenue, 77 S.W.3d 616, 620 (Mo. banc 2002). The Director has the burden to prove these elements by a preponderance of the evidence. Brown v. Dir. of Revenue, 164 S.W.3d 121, 125 (Mo. App. E.D. 2005).
Only the second element is at issue in the present case, regarding whether Trooper Highly had probable cause to believe Trentmann drove while intoxicated, The existence of probable cause hinges on the particular facts of a case. Langley v. Dir. of Revenue, 467 S.W.3d 870, 873 (Mo. App. W.D. 2015). In determining whether probable cause exists, a court must reason whether "the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." White v. Dir. of Revenue, 321 S.W.3d 298, 309 (Mo. banc 2010) (citations omitted). The determination of probable cause depends on the viewpoint of a cautious, trained, and prudent officer at the scene at the time of the arrest. Stewart v. Dir. of Revenue, 75 S.W.3d 900, 902-03 (Mo. App. W.D. 2002). "The quantum of evidence necessary to establish probable cause is considerably less than that required to prove guilt beyond a reasonable doubt." Warner v. Dir. of Revenue, 240 S.W.3d 745, 750 (Mo. App. W.D. 2007).
First, regarding evidence of Trooper Highly's belief of Trentmann's intoxication, Trooper Highly observed the following: a moderate odor of intoxicants, bloodshot and watery eyes, and mumbled speech. None of Trooper Highly's observations are refuted by Trentmann. See McCarthy v. Dir. of Revenue, 120 S.W.3d 760, 762-64 (Mo. App. E.D. 2003) (finding probable cause based on uncontroverted evidence that included odor of alcohol, bloodshot *43 eyes, unresponsiveness to questions, and slurred speech). Given these observations, it was reasonable for Trooper Highly to believe Trentmann was intoxicated.
However, the crux of our analysis is whether Trentmann was intoxicated at the time he drove. Here, the record presents a discrepancy regarding the time of the crash. Although the trial court held that the crash occurred at 5:10 a.m., the record failed to identify the actual time of the accident.[5] Trentmann argues that because the time of the crash is unknown, a reasonably cautious, prudent, and well-trained officer could not reasonably believe Trentmann drove while intoxicated without knowing when the crash occurred. However, the precise time of the crash is unnecessary for purposes of determining whether Trooper Highly had probable cause to believe Trentmann drove while intoxicated. Hager v. Dir. of Revenue, 284 S.W.3d 192, 197 (Mo. App. S.D. 2009) ; Cain v. Dir. of Revenue, 896 S.W.2d 724, 726 (Mo. App. E.D. 1995) ("Nothing in the statutes or case law requires the Director to prove the time of an accident"). Despite the trial court's error regarding the exact time of the accident, the judgment is not necessarily against the weight of the evidence so long as the facts, when taken in aggregate, are sufficient to find that Trooper Highly had probable cause to believe Trentmann drove while intoxicated.
Here, there is sufficient evidence to support the trial court's finding that Trooper Highly had probable cause to believe Trentmann drove while intoxicated. Trentmann stated that he consumed alcohol "last night" and that he woke up to head home "that morning." Trentmann also admitted he had last consumed alcohol at 7:00 p.m. the night before the accident and did not indicate that he had consumed alcohol since. Further, nothing in the record suggests that Trooper Highly observed alcoholic beverages or containers at the scene. Because Trooper Highly received notification of the crash at 5:18 a.m., the crash occurred sometime "that morning" prior to 5:18 a.m. and after 12:00 a.m. Based on Trentmann's statements, it was reasonable for Trooper Highly to conclude that Trentmann had last consumed alcohol the night before the crash and that the crash occurred sometime that morning while he was still intoxicated. See Shanks v. Dir. of Revenue, 534 S.W.3d 381, 385-87 (Mo. App. W.D. 2017) (finding probable cause where appellant admitted to consuming alcohol before accident and where officer knew accident occurred that morning even though exact time of crash was unknown).
Unlike the cases cited by Trentmann, here, Trooper Highly found Trentmann at the scene of the crash rather than at another location where he could have consumed alcohol in the meantime. Cf. Domsch v. Dir. of Revenue, 767 S.W.2d 121, 122-24 (Mo, App. W.D. 1989) (finding no probable cause where officers found driver at restaurant an hour and forty minutes after accident); Pontius v. Dir. of Revenue, 153 S.W.3d 1, 3-4 (Mo. App. E.D. 2004) (holding there was no probable cause where officers first observed driver at his home approximately one hour after accident); Warren v. Dir. of Revenue, 416 S.W.3d 335, 341-43 (Mo. App. S.D. 2013) (deferring to trial court's determination finding no probable cause where no one was present at scene of accident when officer arrived). The unrefuted facts support *44 a reasonable inference that Trentmann did not leave the scene or consume alcohol after the crash. See Shanks, 534 S.W.3d at 387 (affirming trial court's judgment finding probable cause where officer did not find evidence at scene of crash to indicate appellant drank alcohol after accident).
The facts found credible by the trial court support its conclusion that a cautious, trained, and prudent police officer would reasonably believe Trentmann was driving while intoxicated. Thus, the trial court's finding that the Director met all three statutory elements to revoke Trentmann's license was supported by substantial evidence and was not against the weight of the evidence. Point denied.
Point II
In his second point, Trentmann argues that the trial court erroneously applied the law in that Trooper Highly violated statutory notice requirements by failing to state multiple reasons for requesting a breath test after he arrested Trentmann. We disagree.
Section 577.041 requires an arresting officer to (1) give the person the reasons for requesting a chemical test and (2) inform the person that his or her license will be revoked if the test is refused. Section 577.041.2; Corum v. McNeill, 716 S.W.2d 915, 916 (Mo. App. E.D. 1986). If the arresting officer omits statutorily necessary information, "[n]o refusal is valid." Zimmerman v. Dir. of Revenue, 988 S.W.2d 583, 585 (Mo. App. E.D. 1999).
Prior cases considering an officer's obligation to state reasons for requesting a chemical test hold that a reading of Missouri's implied consent law is sufficient to satisfy statutory requirements. Corum, 716 S.W.2d at 917 ; Bolling v. Schaffner, 488 S.W.2d 212, 215 (Mo. App. 1972) ; Simon v. Dir. of Revenue, 509 S.W.3d 135, 138-39 (Mo. App. S.D. 2016) (explaining courts infer that necessary information is provided when officers read implied consent law to drivers). An officer does not need to provide specific reasons for requesting a chemical test. Nuyt v. Dir. of Revenue, 814 S.W.2d 690, 692 (Mo. App. E.D. 1991). Rather, an officer satisfies the statutory requirements by following standard procedures, such as preparing an Alcohol Influence Report, informing the driver of the consequences for refusal, and stating that the request for the test is to measure the driver's blood alcohol content. Id.
Here, it is undisputed that Trooper Highly read Trentmann Missouri's implied consent law, which included the following: "To determine the alcohol or drug content of your blood, I am requesting you submit to a chemical test of your breath." Further, the implied consent law informed Trentmann of the consequences of refusal. Therefore, Trooper Highly satisfied the requirements of Section 577.041.2. See Teson v. Dir. of Revenue, 937 S.W.2d 195, 197 (Mo. banc 1996) (clarifying purpose of warning is to "inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content").
Given these facts, the trial court did not erroneously apply the law. Point denied.
Conclusion
The trial court's judgment sustaining the revocation of Trentmann's driving privileges is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously apply the law. The judgment is affirmed.
Robert M. Clayton III, J. and Angela T. Quigless, J., concur.

Missouri's implied consent law encompasses the reason for an arrest and the consequences of refusing a test to determine the alcohol content of a person's blood.

All statutory references to Section 577.041 are to RSMo. (Cum. Supp. 2013), which was later amended, effective January 1, 2017.

All statutory references to Section 577.020 are to RSMo. (Cum. Supp. 2014).

"Reasonable grounds is virtually synonymous with probable cause." Hawkins v. Dir. of Revenue, 7 S.W.3d 549, 551 (Mo. App. E.D. 1999) (citations omitted). Thus, we refer to reasonable grounds and probable cause interchangeably.

The record indicates Trooper Highly received the dispatch call regarding the crash at 5:18 a.m. In his deposition, Trooper Highly stated the accident occurred at 5:10 a.m. and then clarified he only knew the time when he received the notification. The actual time of the crash is unknown.